**AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT**

1. I, Jessie T. Murray, being duly sworn, hereby say the following is true based upon my personal knowledge and belief:

**I.**

**INTRODUCTION**

2. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since 1995. Presently I am assigned full time to investigation in forfeiture related matters.

3. Unless stated otherwise, I have personal knowledge of the matters set out in this affidavit. To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me by case agent SA B. Craig Mason ("SA Mason") of the FBI. In addition, I also make this affidavit based upon information I have reviewed from FBI records. This affidavit is offered for the sole purpose of establishing probable cause to seize the asset as set forth below and does not set forth all of the facts of this investigation. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

**II.**

**PURPOSE OF AFFIDAVIT**

4. This affidavit is offered in support of an application for a warrant to seize all funds in Prestige Community Credit Union, Member Number 95803, Primary Business Account Number 950, held in the

1

name of "The Church For The Healthy Self," 3131 McKinney Avenue, Suite 600, Dallas, TX 75204-2456 (the "SUBJECT ACCOUNT").

5. All funds in the SUBJECT ACCOUNT are subject to seizure and forfeiture to the United States because there is probable cause to believe that the funds represent proceeds of violations of 18 U.S.C. § 1343 (Wire Fraud), which is a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7)(A) and § 1961(1) and 18 U.S.C. § 1956 (Money Laundering). As such, all funds in the SUBJECT ACCOUNT are subject to seizure pursuant to 18 U.S.C. § 981(b) and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and § 981(a)(1)(C). In addition, the funds are subject to seizure pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(f) because there is probable cause to believe that the funds to be seized would, in the event of a criminal conviction, be subject to forfeiture and an order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture.

### III.
### SUMMARY OF FACTS ESTABLISHING
### PROBABLE CAUSE FOR FORFEITURE

6. As discussed more fully below, the FBI is investigating an investment fraud scheme operated by KENT RALPH EMERSON WHITNEY (WHITNEY) through The Church for the Healthy Self (CHS), based in Dallas, Texas.

7. In September 2011, WHITNEY pled guilty to wire fraud. In December 2011, WHITNEY was sentenced in federal court in Chicago, Illinois to 44 months in prison. As an options trader, WHITNEY swindled more than $600,000 from ten victim investors, both for a

purported commodity pool investment and for trading in futures accounts to be held jointly between WHITNEY and the victims.  WHITNEY returned approximately $230,000 as so-called investor redemptions and misused most of the remaining funds for his own benefit and for the benefit of acquaintances.

    8.   CHS purports to be a Christian organization, part of the universal Christian Church advocating the Bible's teaching, founded in 2014 by Pastor Dr. K.R. WHITNEY. The website for CHS states its "CHS Trust" is a church charity and through the trust, individuals can "actively engage in philanthropy and support qualified charitable organizations."  The CHS website also states that CHS provides financial services to help grow the equities in the trust.

    9.   CHS offers a "Human Kindness Club," a "Charitable Giving Plan" that is member-advised.  The charitable trust program purports to be maintained and operated as a 501(c)(3) non-profit.  The website states, "we integrate charitable giving and financial planning to increase equities by investing contributions with interest yield of 6% – 12% per year."

    10.   CHS also offers a "Standard Partnership Trust," a giving fund that claims to diversify investment and offer immediate tax savings and tax free growth.

    11.   CHS states it is a self-funded giving program.  There is a $1,000 minimum.  There is also a mini-partnership trust program with a $40 per month minimum funding level.  The website states the fund is 100% tax deductible on all value received.  Additionally, the website

states a CHS managed investment fund is also available, one "that has average 12% a year to its investors."

12. The CHS website states the Program for Charitable Giving is governed by members and staff who bring a variety of expertise to the oversight of the program and its activities.

13. CHS also offers a "fun and creative" Charitable Certificate, which purports to support your favorite charity organization and "makes you money if Gold or Oil moves in a gainful direction."

14. CHS filed IRS tax form 990-EZ and claimed total revenue of $54,300 in 2015 and $119,800 in 2016. The tax documents listed WHITNEY as the Pastor, Kelly Florek as the Secretary, and Richard King, Maxine Irgang, and Katherine Domalgalski as Directors. Maxine Irgang's profile on LinkedIn lists her as a make-up artist and licensed esthetician.

15. The corporate filing for CHS, which was filed on August 10, 2015 in Texas, listed WHITNEY as Corporate Officer, Registered Agent, President, and Director. It listed Richard E. King as Director, Secretary, and Registered Agent. It also listed Kelly Florek as Director and Chief Financial Officer.

16. On LinkedIn, WHITNEY is listed as Pastor and Church President. The LinkedIn profile states that the church supports over 20 charities, manages investments, and offers programs in everything from young earth creationism to health and wellness.

17. On March 20, 2017, WHITNEY published a YouTube video touting the "mutual giving fund" of CHS. He stated he had a

4

background in the financial service industry.  He offered through CHS a charity to charity fund.  The video stated when money comes into the ministry, they donate to 40 to 90 charities per month depending on "how much the Lord has blessed us with" and "how many activities that we feel fit to support."  WHITNEY stated that for those that partner with CHS, for every dollar they put in, half of it is invested into a fund and the money is "replenished through its investment, god willing, that they are good" and the other half is divided up into charitable groups to which CHS is giving.  WHITNEY stated they support CHS in-house programs such as the prayer request line, assisting people who lost their jobs or who need a car, "GD" program, welfare to work program, hunger program, giving out bibles, and free video and classes on the internet.  WHITNEY asked viewers to take a look at the Partners page on the website and hoped viewers would become partners in the "mutual giving fund."

## IV.

## FINANCIAL ANALYSIS

18.   The joint owners of the SUBJECT ACCOUNT are listed as Richard Earl King II, Maxine N. Irgang, and Kelly Florek.

19.   I have reviewed statements for the SUBJECT ACCOUNT for December 2018 and January 2019.  The balance in the account on December 1, 2018 was $2,820,541.23.  The current balance is approximately $4 million.

20.   The SUBJECT ACCOUNT had approximately $1.9 million in credits and approximately $2.1 million in debits for December 2018 and approximately $2.5 million in credits and approximately $1.9 million

in debits for January 2019.  The majority of the credits during the time period reviewed were large deposits in round numbers of thousands of dollars made at various cooperative credit unions in Lake Forest, Long Beach, and San Jose.

21. Debits for the SUBJECT ACCOUNT included payments to WHITNEY's PayPal account, payments to WHITNEY's Capital One credit card account, County of Orange property tax payment, and payments to Walmart, iTunes, Priceline, Lyft ride sharing service, Office Depot, Pelican Hill Resort, Balboa Bay Resort, Western Union, Comcast, Discovery card, CitiCard, Best Buy, PG&E, Netflix, Saks Retail, Cricket Wireless, Southwest Airlines, CNAC (a car financing company), and Department of Education for a student loan.

22. Debits also included over 15 checks drawn on the SUBJECT ACCOUNT issued in December 2018 and January 2019, made payable to individuals, ranging in amounts from $1,000 to $3,000, with the memo line stating "November interest", "Dec 2018 interest", and "interest take out."

23. Additionally, checks drawn on the SUBJECT ACCOUNT went to Le Vana Queen for advertising services, in the amount of $24,040, and V Star TV for payment for Radio Bolsa Corp ME Vietnam radio, in the amount of $41,000.

24. During the time period reviewed, there were $48,112.78 in debits that referenced WHITNEY in the description.

25. During the time period reviewed, approximately $497,771.71 from the SUBJECT ACCOUNT was used to pay for the American Express credit card of Lena Le.

26. During the time period reviewed, there were $4,330.44 in debits that referenced Maxine Irgang, a joint owner of the SUBJECT ACCOUNT and Director of CHS, to include payments to Geico, T-Mobile, and Golub (a real estate investment firm).

27. The following donations, that appeared to be charitable, were made from the SUBJECT ACCOUNT:

12/05/18 – Red Cross $100

12/05/19 – Second Harvest $1,000

12/31/18 – Feeding America $515

01/25/19 – Charity Golf $400

01/30/19 – Life Outreach $144.

28. There were two outgoing wire transfers made from the SUBJECT ACCOUNT to TD Ameritrade Clearing, on December 11, 2018 and December 21, 2018, of $200,000 each, totaling $400,000.

29. On December 1, 2018, the SUBJECT ACCOUNT received a deposit of $10,000 in cash and $96,000, consisting of one check and four cashier's checks, believed to be from CHS investors. The deposit was made in the Eagle Community Credit Union branch in Lake Forest, California. The items are listed as follows:

11/28/18 – Abel Duong, $50,000 check

11/29/18 – $16,000 Nuvision Credit Union cashier's check

11/27/18 – Vinh Hong, $15,000 Chase cashier's check

11/27/18 – Vinh Hong, $11,000 Wells Fargo cashier's check

11/29/18 – Trinh Ngoc Pham, $4,000 Wells Fargo cashier's check.

30. On December 4, 2018, the SUBJECT ACCOUNT received a deposit of $28,000, consisting of two checks and one cashier's check, believed

7

to be from CHS investors. The deposit was made in the Eagle Community Credit Union branch in Lake Forest, California.  The items are listed as follows:

12/04/18 – David and Linda Nguyen, $10,000 check

11/30/18 – Steve Pho, $10,000 check

12/03/18 – Kevin Nguyen, $5,000 Bank of America cashier's check

12/04/18 – David and Linda Nguyen, $3,000 check.

31. On December 7, 2018, the SUBJECT ACCOUNT received a deposit of $10,000 in cash and $222,000.00, consisting of five checks, believed to be from CHS investors.  The deposit was made in the Eagle Community Credit Union branch in Lake Forest, California.  The checks are listed as follows:

12/01/18 – P.T. and C.C. Tashima, $5,000 check

12/05/18 – Sharon Doan, $15,000 check

12/05/18 – Hong Ngo, $100,000 check

12/06/18 – David Parrish, $2,000 check

12/06/18 – Minh Ngo, $50,000 check

12/06/18 – Minh Pham, $50,000 check.

## V.

## INVESTIGATION

32. On February 28, 2019, SA Mason interviewed Kelly Florek (Florek), Secretary for CHS, and resident of Chicago, Illinois. Florek was hired by WHITNEY around Thanksgiving 2018 to keep the books for CHS.  Florek stated the books were a mess.  Prior to her starting her job, the church had regional representatives that kept separate sets of books for each region.

33.     On February 28, 2019, SA Mason interviewed Richard Earl King II (King), Director of CHS.  King assists with office administration for CHS in Westminster, California.  King stated that he did the banking for CHS and that WHITNEY is in charge of CHS.  King further states that investors give donations to CHS or invest in CHS trust with a 1% per month guaranteed return.  King stated the money from investors is invested on the trading floor in Chicago.  King was aware of WHITNEY's prior criminal conviction.  King has been working for CHS for four years.  CHS does provide monthly statements to its investors.  (In my training and experience, these account statements are typically e-mailed to investors.)

34.     CHS has recently aired a television commercial that is played on Vietnamese television stations.  It introduces viewers to an investment program that is "safe, effective, and insured by FDIC and SIPC," gives investors "higher interest rates than a 401K or IRA with maximum tax benefits," and earns "12% interest with CHS Trust."  The television commercial requests viewers to register for a free seminar every Wednesday at 6:00 p.m. to learn about the "12% interest rate program" and lists CHS Trust's office address in Westminster, California and its office telephone number.

35.     The Securities and Exchange Commission (SEC) received a complaint from a financial advisor in Orange County, California.  The financial advisor's client received information about CHS and then had a meeting with two individuals at the CHS office.  The client had a second meeting at the home of a potential CHS investor, along with the financial advisor and several other people.  WHITNEY was present at

9

the home meeting. The financial advisor opined that the offer presented by WHITNEY, a tax deduction with a guaranteed return, was implausible and could not be true. The financial advisor researched WHITNEY, found that he had a prior criminal fraud conviction, and filed a complaint with the SEC. The financial advisor saw a picture of WHITNEY on the internet and confirmed that it was the same person that attended the home meeting.

36. CHS maintains a bank account located at Prestige Community Credit Union (Prestige) in Dallas, Texas. According to bank officials at Prestige, a shared branch credit union allows members of participating credit unions to conduct bank transactions at any of the shared branch locations as though the members were at their home credit union. I reviewed the bank records from Prestige for December 2018 and January 2019 and noted 14 large deposits totaling $2,035,327.00 at Golden 1 Credit Union in San Jose, California, 27 large deposits totaling $1,200,993.00 at Long Beach Memorial (Allied Healthcare Federal Credit Union) in Long Beach, California, and five large deposits totaling $366,000.00 at Eagle Community Credit Union in Lake Forest, California. According to Prestige officials, these deposits are made at shared branch credit unions in California and are subsequently credited to CHS's Prestige account (the SUBJECT ACCOUNT) in Dallas, Texas.

37. On March 1, 2019, SA Murray spoke with Paul Gill, Senior Vice-President of Information Technology for Prestige. Paul Gill advised that the credit unions involved in the share branch system are connected through an interstate network, the Co-Op, that gives each

shared branch real time access to banking information for its account holders. For example, if a member has an account in Dallas, Texas and makes a deposit at a shared branch credit union in California, the deposit is transmitted electronically via the Co-Op shared branch interstate network and gets credited to the customer's home bank account in Texas.

## VI.
## CONCLUSION

38. The FBI is requesting a warrant to seize all funds in the SUBJECT ACCOUNT because the operation of CHS is permeated with fraud. The SUBJECT ACCOUNT is the medium used by WHITNEY to receive deposits from investors and issue investor checks, representing purported interest earned, when in fact there is no evidence of any notable investments or meaningful charitable donations made by CHS. The bank records reviewed show that new investor money is used to pay interest payments to prior investors, akin to a Ponzi scheme, and is used to pay the personal expenses of WHITNEY and his co-conspirators.

39. I believe that all the funds in the account of CHS (the SUBJECT ACCOUNT) constitute investor funds because CHS does not appear to have any other source of income.

40. The evidence set out above establishes probable cause to believe that all funds in the SUBJECT ACCOUNT are subject to seizure pursuant to 18 U.S.C. §981(b) and forfeiture pursuant to 18 U.S.C. §981(a)(1)(A) and §981(a)(1)(C) on the grounds that the funds are traceable to proceeds of violations of 18 U.S.C. §1343 (Wire Fraud), and 18 U.S.C. §1956 (Money Laundering). In addition, the funds are

subject to seizure pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(f) because there is probable cause to believe that the funds to be seized would, in the event of a criminal conviction, be subject to forfeiture and an order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture.

_____
Jessie T. Murray
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me
this \_\_\_\_\_ day of March, 2019.

_____
UNITED STATES MAGISTRATE JUDGE